IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
|     PLAINTIFF, ) | |
| v.                                                      ) | CASE NO. 2:08-CV-180-MEF |
| ) | |
| 22.58 ACRES OF LAND, MORE OR, ) | (WO) |
| LESS, SITUATED IN MONTGOMERY ) | |
| COUNTY, STATE OF ALABAMA, ) | |
| AND OSI, INC., *et al.*, ) | |
| ) | |
|     DEFENDANTS. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This condemnation action is the latest installment in a protracted litigation between the United States and OSI, Inc. ("OSI") that arose out of the Government's alleged contamination of property owned by OSI in Montgomery County, Alabama. The case is presently before this Court on a Motion to Dismiss (Doc. # 16), filed by OSI on April 14, 2008. The Court has carefully considered the arguments of counsel and the applicable law. For the reasons set forth below, the Court finds that the Motion is due to be DENIED.

**II. JURISDICTION AND VENUE**

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1346(a)(4), and 1367. Defendants have not argued that the court lacks personal jurisdiction over them, and there is no dispute that venue is proper pursuant to 28 U.S.C. §

1391(b).

### III. FACTUAL AND PROCEDURAL HISTORY

The facts surrounding this action for condemnation are many and varied. The ones relevant to the current motion are few. The Court will confine itself to the latter set of facts for purposes of this Memorandum Opinion and Order, but any with interest can find the full background at *OSI, Inc. v. United States*, 525 F.3d 1294, 1296-97 (11th Cir. 2008) (*OSI III*); *OSI, Inc. v. United States*, 285 F.3d 947, 949-50 (11th Cir.2002) (*OSI I*); *OSI, Inc. v. United States*, 510 F. Supp. 2d 531, 534-35 (M.D. Ala. 2007) (Fuller, C.J.) (*OSI II*).

#### A. First Action in this Court

On August 19, 1998, OSI filed a complaint in this Court that began the now decade-long litigation between the parties. The case was assigned to the Honorable Myron H. Thompson and styled *OSI, Inc. v. United States, et al.* and given the case number 2:98-CV-920-MHT. In that case, OSI claimed that the Government deposited hazardous materials on and around its property and wrongfully fenced some of its property to contain the waste. The Government operated a landfill on what is now OSI's property from 1956 until the early 1970s pursuant to leases with the land's previous owners. OSI purchased the parcel in 1979. OSI sought injunctive relief under the Resource Conservation and Recovery Act ("RCRA") and reimbursement of costs it expended to clean up contamination under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"). OSI also sought monetary recovery for various torts under the Federal Tort Claims Act ("FTCA").

Judge Thompson dismissed all claims against the defendants in that case in March, 2001. On appeal, the Eleventh Circuit affirmed the dismissal of the federal tort claims, but vacated the dismissal of the CERCLA and RCRA claims. *OSI I*, 285 F.3d at 947. The case was reassigned to the undersigned after remand. *See OSI II*, 510 F. Supp. 2d at 534-35. Defendants then filed motions for summary judgment, which were met by OSI's partial cross motion. This Court granted the Government's motions, denied OSI's motion, and entered a final judgment in this case in January, 2007. *Id.* The Eleventh Circuit affirmed this final Opinion in June, 2008. *OSI III*, 525 F.3d at 1294. While the first District Court case was working toward a conclusion, OSI instituted an action in the Court of Federal Claims.

### B. Action in the Court of Federal Claims

OSI filed a complaint against the United States in the Court of Federal Claims on July 26, 2004. *OSI, Inc. v. The United States*, 73 Fed. Cl. 39 (2006) ("Tucker Act case"). That action sought compensation from the Government for the contamination of OSI's property. In its complaint, OSI alleged that the Government's actions "amount[ed] to an 'inverse condemnation' in violation fo the Fifth Amendment to the United States Constitution." *Id.* at 39-40. First, OSI claimed that the contamination of groundwater caused by the disposal of waste materials upon its land constituted a taking of its property. Second, OSI claimed that the Government's placement of a fence on its property amounted to a taking. OSI sought $10,000,000.00 and other damages and expenses in this action.

The Government filed a Motion to Dismiss these claims, arguing that 28 U.S.C. §

1500 barred the Court of Federal Claims from exercising jurisdiction over the condemnation claim because of the complaint for CERCLA response costs was pending before this Court. Section 1500, a provision of the Tucker Act, prevents the Court of Federal Claims from exercising jurisdiction if a plaintiff "ha[s] the same claim against the United States or its agent pending in another Court at the time of the filing [in the Court of Federal Claims]." *Id.* at 43 (citing *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993); *Harbuck v. United States*, 378 F.3d 1324, 1328 (Fed. Cir. 2004)). Section 1500 only precludes a claim if the claim pending in the other court arises from the same operative facts and seeks the same relief. *Id.* at 44 (citing *Harbuck*, 378 F.3d at 1328).[1] The Court of Federal Claims held first that the CERCLA claims then pending before this Court and the claims then pending before the Court of Federal Claims arose from the same operative facts. The Court of Federal Claims went on to hold, however, that the two actions did not seek the same relief and that the action was therefore not barred by § 1500. Hence, the Court of Federal Claims denied Defendant's Motion to Dismiss. That case is currently involved in a program of Alternative Dispute Resolution ("ADR") sponsored by the Court of Federal Claims and is stayed pending resolution of the ADR. Counsel for the Government in the instant action has represented that the Tucker Act case is nearing settlement.

---

[1]This determination is made as of when the claim is brought. *Id.* (citing *Keene*, 508 U.S. at 207).

## C. The Present Action

On March 13, 2008, the United States, at the request of the Deputy Assistant Secretary of the Air Force (installations), instituted this action seeking condemnation of certain real property located in Montgomery County, Alabama. (Doc. # 1.) OSI owns some of the land the government seeks to condemn, which is adjacent to Maxwell Air Force Base in Montgomery County, Alabama. The Government claims it has authority to take the land under 40 U.S.C. §§ 3114, 3113, 10 U.S.C. §§ 2663, 9773, and Public Law 109-289, which appropriated funds for the purpose. The Government claims that "[t]he public use for which said land is taken is to conduct environmental work at Remedial Action OU No. 1 Project, Maxwell Air Force Base . . . and for such other uses as may be authorized . . . ." (Doc. # 1-2.) The Government claims the estimated compensation for the three tracts and estates involved is $53,000.00. The Government seeks to condemn only certain estates in the above-referenced parcels: an "Environmental Restoration Easement" across tract No. 166-E-1, which is to last twenty years; a "Monitoring Well Easement" over tract No. 166-E-2, which is also to last twenty years; and a "Temporary Grading and Drainage Easement" over tract No. 166-E-3, which is to last only two years. (Doc. # 1-2.)

The Government filed a Motion to Deposit Funds (Doc. # 2) and a Declaration of Taking (Doc. # 3) in support of its Complaint for Condemnation. The Government also filed a Motion for Order for Delivery (Doc. # 4) and a Notice of Condemnation (Doc. # 5).

In response to these filings by the Government, OSI filed a Motion to Dismiss. (Doc.

# 16).² OSI argues in its Motion that the pendency of the action in the Court of Federal Claims requires dismissal of the instant action. The Government responds that, while the two cases are closely related, there is nothing about the unresolved Federal Claims case that requires dismissal of the case currently before the Court. After careful consideration of the submissions of the parties, and for the reasons set forth below, the Court finds that OSI's Motion to Dismiss is due to be DENIED.

## IV. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. Therefore, for the purposes of adjudging a Rule 12(b)(6) motion to dismiss, the court will accept as true all well-pleaded factual allegations and view them in the light most favorable to the plaintiff. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007); *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). While Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," as a general matter, to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Plaintiff's "[f]actual allegations must be enough to raise a right to relief above a speculative level on the assumption that the allegations in the complaint are true." *Id.* at

---

²The other named defendant is Sarah G. Spear, as Revenue Commissioner of Montgomery County, Alabama. She filed an Answer on April 7, 2008 (Doc. # 15), in which she denied having sufficient knowledge to answer the averments in the complaint and also noted that any ad valorem taxes due as a result of the condemnation were to be paid to her.

1965. It is not sufficient that the pleadings merely "[l]eave open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 1968 (internal quotation and alteration omitted).

## V. DISCUSSION

The difficulty presented by this Motion is a result of the particulars of the eminent domain power of the United States. In particular, that the Government can exercise that power in two ways:

> it can enter into physical possession of property without authority of a court order; or it can institute condemnation proceedings under various Acts of Congress providing authority for such takings. Under the first method—physical seizure—no condemnation proceedings are instituted, and the property owner is provided a remedy under the Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491, to recover just compensation. Under the second procedure the Government may . . . take immediate possession upon order of court before the amount of just compensation has been ascertained.

*United States v. Dow*, 357 U.S. 17, 21 (1958) (internal citations and quotations omitted). The primary issue presented by this Motion is whether a first-filed complaint by a landowner that claims the Government has effected a taking using the first method and seeks damages under the Tucker Act precludes the Government from instituting condemnation using the second procedure during the pendency of the first-filed action. The Court finds that it does not.

As an initial matter, the Court notes that there is nothing about the statutory scheme that governs takings that indicates that once a landowner has filed an action for damages under the Tucker Act a district court loses jurisdiction over a proceeding to condemn the same subject property. The Declaration of Taking Act expresses an affirmative showing of

congressional intent to grant jurisdiction to the district court over taking cases involving property subject to a declaration of taking. *See Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 12 (1990). Congress did not provide any exception for cases where a Tucker Act claim was pending, and the Court must assume that was intentional. *Stephenson v. United States*, 33 Fed. Cl. 63, 74 (1994) ("The Declaration of Taking Act expresses an affirmative showing of congressional intent to grant jurisdiction to the district court over taking cases involving property subject to a declaration of taking. . . . This court must assume that Congress' failure to provide any exception for cases where a Tucker Act claim was pending in this court was intentional."); *see Georgia-Pacific Corp. v. United States*, 568 F.2d 1316, 1321 (Ct. Cl. 1978) (holding, where a landowner filed a claim in the Court of Claims under the Tucker Act before the Government filed a declaration of taking in the district court, that the district court retained jurisdiction to adjudicate the taking during the pendency of the Tucker Act claim); *see also Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) (Congress is deemed to know the state of the law at the time it passes legislation). Therefore, the details of the statutory scheme do not evince a congressional intent to preclude the filing of condemnation actions pursuant to the Declaration of Takings Act when a claim involving the same property is pending pursuant to the Tucker Act. The question then becomes whether the principle of comity known as the "first-filed rule" compels this Court to transfer or stay this case pending resolution of the action pending in the Court of Federal Claims.[3] The Court

---

[3] OSI raised the first-filed rule in its Reply to The Plaintiff's Response to Motion to Dismiss. (Doc. # 27). The Court has construed the portion of the Reply that raises the first-filed rule as a Motion to Transfer or Stay.

finds that it does not.

The so-called "first-filed rule" is a well-established rule of federal comity first articulated in this country by Chief Justice John Marshall: "In all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith v. McIver*, 9 Wheat. (22 U.S.) 532, 535 (1824); *McGregor & Werner, Inc. v. Motion Picture Laboratory Technicians Local 780*, 806 F.2d 1003, 1004 (11th Cir. 1986) (noting that the first-filed rule is well-settled). The rule provides that "where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1136 (11th Cir. 2005). The result of this presumption is that "the party objecting to jurisdiction in the first-filed forum carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Id.*; *see also Merrill Lynch Pierce, Fenner & Smith v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982) ("In absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case.")

The rule serves important functions, such as "to avoid the waste of duplication, to avoid rulings which may trench upon the authority [other] courts, and to avoid piecemeal resolution of issues that call for a uniform result." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985). Its main purpose is to promote judicial efficiency. *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 689 (E.D. Tenn. 2005). The first-filed rule should not be applied too rigidly or mechanically and a District

Court may in its discretion decline to follow the first-filed rule if following it would frustrate rather than further these purposes. *See Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). If the second-filed court invokes the rule, the court can either stay the second-filed action pending the outcome of the first-filed suit or transfer the second-filed action to the court of the first-filed action. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir.1999); *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 952 (5th Cir. 1997).

Duplicative lawsuits are those in which the issues "have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Fuller*, 370 F. Supp. 2d at 688; *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997). In determining whether actions are duplicative and the first-to-file rule applies, courts consider three factors: (1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake. *Fuller*, 370 F. Supp. 2d at 688; *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625-26 (9th Cir.1991); *Thomas & Betts Corp. v. Hayes*, 222 F. Supp. 2d 994, 996 (W.D. Tenn. 2002); *Smithers-Oasis Co. v. Clifford Sales and Mktg.*, 194 F. Supp. 2d 685, 687 (N.D. Ohio 2002). The parties and issues need not be identical. *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950-51 (5th Cir.1997). Rather, the crucial inquiry is whether the parties and issues substantially overlap. *Save Power*, 121 F.3d at 950-51.

The first-filed rule does not require transfer or stay of the instant case for three reasons. The first results from the specialized jurisdiction of the other court involved in the

litigation  The second and third result from the nature of the involvement of federal courts—and particularly local district courts—in eminent domain takings and the language in the specialized statutes and Federal Rules of Civil Procedure that govern proceedings in eminent domain.  Together, they illustrate why this Court can (and must) continue to exercise jurisdiction over this condemnation action.

First, the first-filed rule does not require transfer of the instant action because the Court of Federal Claims does not have jurisdiction over this condemnation action[4].  The Tucker Act, 28 U.S.C. § 1491 authorizes the Court of Federal Claims "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Id.* § 1491(a)(1).  This jurisdictional statute confers, among other things, exclusive jurisdiction over "inverse condemnation" actions against the United States upon the Court of Federal Claims.  The District Courts, on the other hand, have original jurisdiction over actions by the United States to condemn real estate within their districts for use by the United States.  28 U.S.C. § 1358 ("The district courts shall have original jurisdiction of all proceedings to condemn real estate for the use of the United States or its departments or agencies."); *id.* § 1403 ("Proceedings to condemn real estate for the use of

---

[4]The Court also doubts that the rule suggests a stay. *See Smith v. McIver*, 9 Wheat. (22 U.S.) 532, 535 (1824) ( "In all cases of *concurrent jurisdiction*, the Court which first has possession of the subject must decide it." (emphasis added)).

the United States or its departments or agencies shall be brought in the district court of the district where the land is located or, if located in different districts in the same State, in any of such districts."). Therefore, the Court could not transfer this action to the Court of Federal Claims, even if the first-filed rule suggested that course of action.

Second, while there is some overlap between the issues presented in the two cases, the differences are sufficiently significant that a determination of the first-filed Tucker Act case would leave material issues to be determined in this case. *Fuller*, 370 F. Supp. 2d at 688; *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997). In particular, it is not clear whether the Government would become owner of the estates it seeks in this action as a result of the Tucker Act case, and condemnation might still be necessary to achieve the Government's prospective objectives. In short, it appears that even if OSI prevailed entirely in the Court of Federal Claims the Government might still seek to condemn the monitoring and cleanup estates it seeks to condemn in this action. Indeed, the Government claims it would proceed in this case in any event. Hence, staying the instant case would not serve judicial economy. *See Fuller*, 370 F. Supp. 2d at 689.[5]

---

[5] The Court is aware that it has the authority to decide compensation as of the date of actual taking, even if that taking occurred prior to the filing of the declaration, and to award the value of the taken property to the owners at the time of the taking, not to the record owners at the time the declaration was later filed. *Stephenson*, 33 Fed. Cl. at 74; *see Dow*, 357 U.S. at 20-21. Hence, it appears that this Court could afford all of the relief OSI seeks in the Tucker Act case, which is a good enough reason to stay that case pending resolution of this condemnation action (the Court of Federal Claims sometimes stays first-filed Tucker Act cases on this basis. *See Georgia-Pacific Corp.*, 568 F.2d at 1321; *Stephenson*, 33 Fed. Cl. at 74). That is not what is requested, however. There is an asymmetry in the power of the two courts before which these cases are pending regarding the relief they can provide. Unlike this Court, which can afford all relief sought in both actions, it does not appear that the Court of Federal Claims can afford the

-12-

Finally, the statutory scheme and specialized rules governing this proceeding reveal the special nature of condemnation actions and Congress' intent that local district courts resolve them expeditiously and certainly. In light of these considerations, a district court need not abstain from working toward such a resolution during the pendency of parallel Tucker Act claims. Under The Declaration of Taking Act, 40 U.S.C. § 3114, *et seq.*, upon the filing of a declaration of taking in a district court, "[just] compensation *shall be determined* and awarded *in the proceeding* and established by judgment." 40 U.S.C. § 3114 (emphasis added). Furthermore, under Federal Rule of Civil Procedure 71.1(i)(3), the condemnation court can not dismiss a condemnation action as to any part of the property of which the plaintiff has taken possession or any lesser interest, but must instead award just compensation for the possession so taken. Fed. R. Civ. P. 71.1(i)(3) ("At any time before compensation has been determined and paid, the court may, after a motion and hearing, dismiss the action as to a piece of property. But if the plaintiff has already taken title, a lesser interest, or possession as to any part of it, the court must award compensation for the title, lesser interest, or possession taken."); *see also Kirby Forest Indus.*, 467 U.S. 1, 12 n.18 (1984) (noting that the substantively identical predecessor rule to Fed. R. Civ. P. 71.1(i)(3) "forbids the district court to dismiss an action (without awarding just compensation) if the Government has acquired any 'interest' in the property"). These commands suggest a stay

---

relief sought in this action. Hence, what is a good reason to stay the Tucker Act case is not a good reason to stay this condemnation action; a stay here would seemingly need to be lifted once the Tucker Act case concluded because the Government would still seek the relief it seeks in this case, whether it won or lost in the Court of Federal Claims.

-13-

of this action would violate Congress' intent that local district courts adjudicate condemnation actions quickly, as evinced by 40 U.S.C. § 3114 and Fed. R. Civ. P. 71.1.

The practice of the Court of Federal Claims to stay first-filed Tucker Act cases pending resolution of condemnation actions in local district courts supports this conclusion. *See Preseault*, 494 U.S. at 12 (holding that The Declaration of Taking Act expresses an affirmative showing of congressional intent to grant jurisdiction to the district court over taking cases involving property subject to a declaration of taking); *Georgia-Pacific Corp.*, 568 F.2d at 1321 (holding, where a landowner filed a claim in the Court of Claims under the Tucker Act before the Government filed a declaration of taking in the district court, that the district court retained jurisdiction to adjudicate the taking during the pendency of the Tucker Act claim); *Stephenson*, 33 Fed. Cl. at 74 (affirming district court jurisdiction over a condemnation action when there was a first-filed Tucker Act claim).[6] Therefore, because of the special relationship between a local district court and lands within its district, together with the particularized rules and streamlined process afforded by § 3114 and Rule 71.1, the Court is disinclined to relinquish resolution of this dispute to a Court that does not have jurisdiction over this case.

---

[6] These cases suggest that the "strong presumption" the first-filed rule plays out differently under the unique circumstances of condemnation actions in such a way that the rule does not apply as simply in condemnation cases as it does in more routine litigation. *Manuel*, 430 F.3d at 1136 (noting that the first-filed rule creates only a presumption, not an obligation).

## VI. CONCLUSION

OSI sought by the Motion to Dismiss to have this Court dismiss the instant condemnation action because OSI had previously filed a claim for damages arising from an alleged inverse condemnation of some of the same property that is subject of this condemnation action. The issue thus presented by the motion was a novel one: whether a first-filed complaint by a landowner that claims the Government has effected a taking through possession and seeks damages under the Tucker Act precludes the Government from instituting a condemnation during the pendency of the first-filed action. For the foregoing reasons, the Court holds that a property owner cannot prevent the Government from instituting a taking under the Declaration of Takings Act by first filing a complaint for damages under the Tucker Act. Therefore, it is hereby

ORDERED that the Motion (Doc. # 16) is DENIED, and the portion of Defendant's Reply to the Plaintiff's Response to Motion to Dismiss that the Court construed as a Motion to Transfer or Stay (Doc. # 27) is DENIED.

It is further ORDERED that if the parties have reached a settlement in the Tucker Act case that they agree resolves the issues in this case, they shall file a joint motion to stay or dismiss this case within **seven days** of the date of this memorandum opinion and order. The Court will rule on the other pending motions after that date.

Done this the 3rd day of February, 2010.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE